## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Thomas B. Russell, being duly sworn, depose and state as follows:

### Affiant Background and Purpose of Application

1. I am a Border Patrol Agent (BPA) Intelligence (Intel) [BPA(I)] with the United States Border Patrol (USBP), a component Department of Homeland Security (DHS). I have been employed as a BPA since August 2011. I am currently assigned as an Intelligence Agent, and I work at the Newport Border Patrol Station in Newport, Vermont. I received formal training in the identification and investigation of alien smuggling activities both at the United States Border Patrol Academy in Artesia, New Mexico, from August 2011 to January 2012, and through regular and recurring on-the-job training and annual Virtual Learning Center course certification.

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic device—described below and in Attachment A—that is currently in the possession of USBP in the District of Vermont and the seizure from that device of the electronically stored information described in Attachment B. This warrant application arises from a USBP encounter with Jesus HERNANDEZ on September 17, 2023, when he was detained in Holland, Vermont on suspicion of violating 8 U.S.C. § 1324 while transporting twelve foreign nationals in his vehicle.

3. The item to be searched is one black Samsung cellular phone seized from HERNANDEZ's vehicle on September 17, 2023 (hereinafter, the "Device"). Currently, the Device is located in the evidence safe at the U.S. Border Patrol Newport Station, 373 Citizens Road, Derby, Vermont. Based on my training and experience, the Device has been stored in a manner such that the data on it would remain intact and in the same condition as it was at the

1

time of the seizure of the Device. The applied-for warrant would authorize the forensic examination of the Device for the purpose of seizing electronically stored data, particularly described in Attachment B, that would evidence human smuggling activities engaged in or aided and abetted by the user of the Device—specifically, violations of 8 U.S.C. §§ 1324 and 1325.

4. In my experience investigating human-smuggling cases, I have found that electronic devices such as cellular phones were commonly used to facilitate smuggling events in multiple ways, such as coordinating transportation, guiding the migrants when they illegally enter the country and look for the pick-up location, tracking the migrants' and drivers' positions, and sending verbal and/or non-verbal communications over Wi-Fi and/or telecommunications networks. I am aware that individuals working together to commit immigration crimes often use their cellular phones to contact one another before and during the smuggling event, to research related topics, to navigate while driving, and to coordinate meeting locations. These tasks are frequently necessary in the Swanton Sector generally, and the Richford Station Area of Responsibility (AOR) specifically, because the remote and rural nature of the AOR makes it difficult to arrange meetings at precise times and to navigate to locations unlikely to appear on printed maps.

5. I have received formal training as well as on-the-job training on using the XRY digital forensics extraction program as well the XAMN digital forensics analysis program. The XRY program is a mobile forensic extraction program that it used with a computer to extract data from many types of electronic devices, including smart phones. XAMN is a digital forensics analysis program that is used for decoding, analysis, and reporting of data from electronic devices, including smart phones. XRY and XAMN are not the only programs used in forensic examination of electronic devices, but they are some of the tools available to me. There

are additional tools and programs available for alternative extraction methods at the Swanton Sector Intelligence Unit (SIU), and I am familiar with the capabilities of the specialists employed there to extract and analyze data from electronic devices.

6. The information contained within this affidavit is based upon my training and experience, my own investigative efforts, and investigation by other law enforcement officers with whom I have spoken or whose reports I have reviewed. The following is either known to me personally or has been related to me by persons having direct knowledge of the events. This affidavit is meant to set forth probable cause to believe that the violations occurred and that evidence of them will be found on the Device; it does not necessarily include every fact known to law enforcement about the events described below. Unless otherwise specified, the statements described in the following paragraphs are related in sum and substance and are not meant as direct quotations or complete descriptions.

**Probable Cause**

7. On September 17, 2023, at approximately 3:30 a.m., Border Patrol Agents assigned to the Newport Station were advised by Swanton Sector Communications (hereinafter, "Dispatch") that a remote monitoring camera along the border between the United States and Canada had been activated, indicating that possible cross-border activity was occurring. The camera transmitted an image that Dispatch employees were able to view shortly after the image was captured (timestamped at 3:28 a.m.). The image appeared to show multiple people entering the United States from Canada in a field directly north of the intersection of Lyon Road and Prairie Road in the town of Holland, Vermont. The intersection is approximately a quarter mile from the international border. There is not a designated Port of Entry in that location. The image (with redacted location information) and a map of the area follow for reference.





8. The field and woods north of the Lyon Road/Prairie Road intersection have been historically used by subjects to illegally enter the United States. The intersection is in a remote area of Holland, and all roads in the area are dirt roads, with only a few houses and farms scattered intermittently along them. There are multiple routes of egress from this area along rural dirt roads that would provide smugglers opportunities to evade law enforcement. On the Canadian side of the border, there is a rural road leading to open fields that abut the field in the United States. Because of the proximity of roads on both sides of the border and the relatively flat, open terrain, the Lyon Road/Prairie Road intersection appears to have been a popular location for individuals to illegally enter the United States while avoiding difficult terrain and long distances on foot.

9. Shortly after the remote camera activation, Supervisory Border Patrol Agent (SBPA) Michael Totten was traveling southbound on Lyon Road between Prairie Road and School Road when he observed the headlights of a vehicle traveling north on Lyon Road. As SBPA Totten drove past the vehicle, he observed that it was a white Home Depot rental van bearing New Jersey license plate XMCZ12. In his rearview mirror, SBPA Totten observed the van travel north on Lyon Road toward the area of the remote camera activation. SBPA Totten waited until the vehicle was out of sight and parked near the Lyon Road/School Road intersection to observe any vehicles in the immediate area. Approximately 5 minutes later, SBPA Totten observed the same white van driving southbound on Lyon Road away from the area of the remote camera activation. SBPA Totten requested vehicle registration information from Dispatch and conducted a vehicle stop on the white rental van by activating his emergency equipment. The van promptly yielded, at approximately 4:05 a.m., near the intersection of Lyon Road and Holland Pond Road.

10. SBPA Totten approached the vehicle, identified himself as a U.S. Border Patrol Agent, and immediately noticed multiple people attempting to conceal themselves in the back of the van. SBPA Totten also noticed that the driver was holding a cellular phone. SBPA Totten questioned the driver, who spoke fluent English, as to his citizenship. During his immigration inspection, SBPA Totten could see that there was a GPS application on the cellular phone screen with an intended destination in New Jersey. The driver—later identified by fingerprint verification as Jesus Manuel HERNANDEZ, a U.S. citizen born in 1988—stated that he was born in Puerto Rico and that he did not know the people in the back of the van. SBPA Totten asked HERNANDEZ where he had picked up the people in the back of the van. HERNANDEZ stated that he had picked up the people in a field from Canada.

11. SBPA Totten conducted immigration inspections with the other twelve subjects in the van, who each spoke with SBPA Totten in Spanish. Eleven passengers claimed to be citizens of Mexico, and one passenger claimed to be a citizen of Honduras. SBPA Totten determined that none of the subjects possessed any immigration documents that would allow them to enter or be present in the United States legally, and none claimed to have legal status. The subjects each admitted to SBPA Totten that they had just entered the United States from Canada without presenting themselves for inspection at an authorized Port of Entry. HERNANDEZ and the van's passengers were all detained and transported to the Newport Border Patrol Station for additional investigation and processing.

12. At the Newport Station, HERNANDEZ consented to be interviewed by agents without an attorney being present after being informed of his *Miranda* rights. HERNANDEZ confirmed that the black Samsung cellular phone he had been holding at the time of the stop (the Device) was his. HERNANDEZ identified the phone number for the Device as 774-318-7716.

HERNANDEZ provided a passcode for the phone and showed the interviewing agents a WhatsApp group chat string that involved a large number of people. The chat string, which was predominantly in Spanish, appeared to BPA(I) James Loomis (who is proficient in Spanish) to be used to solicit drivers for different taxi-like transportation jobs across the United States. One of the phone numbers in the WhatsApp chat string was identified as 914-354-7789. That number was familiar to BPA(I) Loomis as being associated with Francisco Luna, an individual known to Border Patrol Agents as an organizer of human-smuggling events based on statements from multiple individuals arrested in previous smuggling attempts. For example, Dalvin Cruz was arrested on December 2, 2022, in the Newport AOR while attempting to pick up and transport migrants who entered the United States illegally.[1] While being interviewed, Cruz claimed to have been recruited and hired by Francisco Luna. Cruz also claimed to have participated as a driver in multiple smuggling events in the area within the previous few months and to have been paid by Luna for each completed event.

13. During his interview, HERNANDEZ declined to provide consent for agents to search his cellular phone (the Device). The Device was seized as evidence and stored in the Newport Station evidence safe. After consultation with the United States Attorney's Office, HERNANDEZ was released from the Newport Station on September 17, 2023, pending further investigation.

**Conclusion and Requests**

14. Based on the foregoing, I submit there is probable cause to believe that on September 17, 2023, Jesus Manuel HERNANDEZ violated 8 U.S.C. § 1324(a)(1)(A)(ii) by

---

[1] On May 25, 2023, a federal grand jury returned an indictment charging Dalvin Cruz with two violations of 8 U.S.C. § 1324 (one of which arose from the event on December 2, 2022) under District of Vermont case number 2:23-cr-00055. That case remains pending.

7

transporting individuals in furtherance of their illegal entries into the United States while knowing or recklessly disregarding the fact that they were aliens. I further submit that the information contained in this affidavit establishes probable cause to believe that the Device would contain evidence of the human-smuggling and illegal entry offenses. I respectfully request the issuance of a search warrant authorizing the examination of the Device seized from Jesus Manuel HERNANDEZ, further described in Attachment A, and the seizure therefrom of data described in Attachment B.

15. Because this warrant seeks only permission to examine the Device, which is already in the possession of law enforcement, execution of the requested warrant would not involve physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this __16th__ day of October 2023.

_Attested to by reliable electronic means_
Thomas B. Russell, Border Patrol Agent (Intel)
U.S. Border Patrol, Department of Homeland Security

Attested to by the complainant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Facetime video call on this _16th_ day of October 2023.

_____
Hon. Kevin J. Doyle, Magistrate Judge
United States District Court
District of Vermont

8